WILLIAM B. AND SUSAN M. HART, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hart v. Commissioner
Docket No. 12752-93
United States Tax Court
T.C. Memo 1995-55; 1995 Tax Ct. Memo LEXIS 59; 69 T.C.M. (CCH) 1822; February 1, 1995, Filed *59 An appropriate Order and Decision will be entered for respondent with respect to the deficiency and addition to tax under sec. 6662(a) and for petitioners with respect to the addition to tax under sec. 6651(a). For petitioners: Audrey J. Orlando. For respondent: Allan D. Hill. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
By notice of deficiency issued April 7, 1993, respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1990 in the amount of $ 2,085 and additions to tax under sections 6651 and 6662(a) in the amounts of $ 149.60 and $ 417.33, respectively. Petitioners resided in Menlo Park, California, when they filed their timely petition. The issues are: (1) Whether petitioners *60 may deduct from gross income a business loss related to their Amway distributorship activity, (2) if not, whether the understatement of tax is attributable to negligence, and (3) whether petitioners are liable for an addition to tax under section 6651. The facts may be summarized as follows. Petitioners William B. Hart (Mr. Hart) and Susan M. Hart (Ms. Hart) have maintained an Amway products distributorship since 1979. Amway, a supplier of various products for personal use, uses a direct marketing concept to promote sales of its products. It is based on a "pyramid" incentive system whereby a distributor's increased sales are rewarded by bonus checks. In addition to earning commissions on their retail sales to consumers, distributors can increase their proceeds by recruiting others to sell Amway products. The "upline" distributors sell Amway products to "downliners" at cost, but they earn "bonuses" based on the volume of "downline" sales. Therefore, the wider a network of downliners a distributor creates, the greater is the distributor's profit potential. Petitioners have consistently reported tax losses on their Amway activity since its inception. Mr. Hart works full time *61 for the U.S. Postal Service, and spends approximately 8 hours a week on the Amway activity. Ms. Hart worked part time during the year at issue, and was able to devote more time to the activity. During 1990 petitioners had gross sales of $ 13,096; however, of this amount $ 2,128 resulted from items purchased by petitioners for their own personal consumption, and there was $ 8,968.37 in sales of products at cost to the downliners. They made a gross profit on the sales of $ 627, and they received an additional $ 1,516 from bonuses paid by Amway. Petitioners' activities related mainly to social functions. Petitioners attended seminars during the year, including a week in Breckinridge, Colorado, and 2 weeks at Redondo Beach, California. They also participated in monthly pot-luck dinners with their "network." Mr. Hart enjoyed a fishing trip with a guest who allegedly "was interested in finding out more about the Chinese [Amway] business". The "supplies" purchase for the activity consisted mainly of groceries petitioners bought while on out of town trips allegedly to deliver products to or visit with clients. On Schedule C, petitioners claimed the following expenses relating to their *62 1990 Amway distributorship activities totaling $ 15,781: Expense
Claimed
Advertising
1,045
Car and truck expenses
2,239
Depreciation
212
Insurance
230
Legal and professional services
100
Office expense
193
Repairs and maintenance
140
Supplies
583
Travel
108
Meals and entertainment
1,615
Bank service charges
134
Dues and publications
801
Laundry and cleaning
68
Freight
660
Bonuses paid to downliners
136
Answering service
187
Continuing education
370
Conventions and seminars
3,730
Demonstration display
1,372
Business gifts
794
Incentives
445
Training
515
Center pass
104
Petitioners' Amway activity resulted in a Schedule C business loss in the amount of $ 13,638. Respondent disallowed the loss, which resulted also in an automatic downward adjustment of their itemized deductions pursuant to section 67. Section 162 allows taxpayers to deduct the ordinary and necessary expenses of carrying on a trade or business. Where a taxpayer conducts an activity not as a trade or business, section 183 allows deductions generally to the extent that the activity generates gross income. To be engaged in a trade or business within the meaning of section 162, "the *63 taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). In determining whether an activity is engaged in for profit, the taxpayer must show an actual and honest objective of making a profit. Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 644-645 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). Determination of whether petitioner had an actual and honest objective of making a profit requires an examination of all the surrounding facts and circumstances of the case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs. We give greater weight to the objective facts than to petitioners' mere statement of intent. Dreicer v. Commissioner, supra at 645; *64 sec. 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., sets forth some relevant factors for determining when an activity is engaged in for profit. No one factor is controlling. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, supra at 426. Such relevant factors include (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the taxpayer's history of income or loss with respect to the activity; (5) the amount of occasional profits, if any, which are earned; (6) the financial status of the taxpayer; and (7) whether elements of personal pleasure or recreation are involved. In regard to the last factor, we note that "a business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility." Jackson v. Commissioner, 59 T.C. 312, 317 (1972). Based on all the facts and circumstances, we find that petitioners lacked the requisite profit *65 objective in carrying on the Amway activity. Petitioners conducted the activity in such a manner that the distributorship had virtually no possibility of recognizing a profit. Although petitioners argue that they conducted their activity in a businesslike manner in that they kept records, sought expert counseling, and devoted much time and effort to the distributorship, the record reflects that petitioners operated in an unbusinesslike manner, with little or no regard to the amount of expenses charged to the distributorship. It is true that petitioners kept copious records, but they did not utilize their records in a way to help them make a profit. Rather, petitioners appear to have maintained records in an attempt to satisfy the substantiation requirements of section 274 rather than to monitor the income and expenses of the distributorship. They did not perform any type of profit/loss analysis of the distributorship's potential. A 12-year history of losses does not reflect a businesslike manner of conducting an activity. Petitioners claim that they sought the advice of experts and attended conferences and seminars to learn techniques of success. Even if we were to accept *66 petitioners' version of these seminars, either the techniques would not appear to have been utilized, or neither petitioners nor their advisers were interested in the importance of cutting back their expenses. Nothing in the record indicates that petitioners either sought or received any advice about how to curtail spending. Further, many of the expenses claimed, such as the seminars and the entertaining, have significant elements of personal pleasure. For example, Ms. Hart indicated that she showed prospective downliners photographs of the seminars they attended as an incentive to get them to join the "network," which suggests that going to Breckinridge and Redondo Beach were not all work and no play. In this regard, we note that petitioners have been before this Court previously where we sustained respondent's determination that expenses petitioners had attributed to the Amway distributorship were personal, rather than business expenses. Hart v. Commissioner, T.C. Summary Opinion 1988-66. Nothing indicates that these types of expenses have gained any business purpose in the interim. Mr. Hart spent approximately 8 hours a week in the Amway distributorship activity, and *67 Ms. Hart, who did not have a full-time job, spent more time in the activity. However, due to the distributorship's low receipts, it appears that petitioners used their time spending money on entertainment rather than focusing on earning a profit. See Poast v. Commissioner, T.C. Memo. 1994-399. Based on the foregoing, we find that petitioners did not engage in their Amway distributorship activity for profit, and they may not deduct expenses from that activity in excess of the distributorship's gross income. Petitioners, however, have substantiated enough expenses to offset the gross income of the activity. Respondent determined an accuracy-related addition to tax pursuant to section 6662(a) for negligence. As noted above, petitioners and their Amway distributorship have previously been before this Court in Hart v. Commissioner, T.C. Summary Opinion 1988-66. The opinion in that case was handed down prior to petitioners' filing their 1990 return. In that case respondent had stipulated that petitioners were engaged in a trade or business in 1983, and the question was whether the deductions claimed with respect to the Amway activity were for personal *68 expenses. We sustained respondent's disallowance of most of the claimed deductions and noted that We are troubled by the fact that these petitioners have apparently been led to believe that a simple word regarding business - actual or potential - somehow changes their ordinary expenses of living into deductible items. We commend petitioners for their recordkeeping, which was exemplary, but warn them that they may not translate their Amway business into a deduction for the personal aspects of their lives. Further, we note respondent stipulated that petitioners were in the trade or business of Amway representatives, so that we were not asked to consider whether petitioners had a profit objective. [Id.]
Petitioners do not appear to have heeded our warning, and respondent was not as charitable this time. Again petitioners have attempted to deduct clearly personal expenses in the guise of an Amway activity that they failed to show was being operated for a profit. We sustain respondent on this issue. Respondent determined an addition to tax pursuant to section 6651 for filing a late return. However, petitioners demonstrated to our satisfaction that they did not file *69 in a timely manner because of the recent death of their son. We find that this is a reasonable cause for delay, and there was no willful neglect. Petitioners are not liable for the addition to tax under section 6651(a). [2]
To reflect the foregoing, An appropriate Order and Decision will be entered for respondent with respect to the deficiency and addition to tax under sec. 6662(a) and for petitioners with respect to the addition to tax under sec. 6651(a).
Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners filed a motion for sanctions against the Government for not complying with the Standing Pre-Trial Order. Even if we were to accept petitioners' version of respondent's pretrial conduct, Rule 91(f) sets out the procedure when a party does not comply with the stipulation process, and petitioners have not complied with those procedures. We also note that whatever failure there might have been, petitioners were not prejudiced.↩